Next case in Gupta v. Airbrush. Counselor, you're up. Thank you, Your Honor. May I ask? Let me tell you, Judge Chapman is not here this morning. She will not be here today, but she will talk to us next week and talk about the cases. She's still on the panel? Yes. Thank you so much. Thank you, Counsel. May it please the Court. Counsel, for the audio record, my name is Curtis Blood and I represent Mr. Gupta. Mr. Gupta filed suit seeking rent for the other party's use of his 28.5 acre parking area. His parking area provides most of the parking for a shopping mall in Williamson County. The Circuit Court of Williamson County dismissed both of his actions for rent. They were dismissed on the plea lease. Mr. Gupta appealed to both of them and this Court consolidated the appeal and went for this consolidated hearing. I want to make sure that in the next few minutes that you become aware of certain key facts. And I think when you become aware of those, you'll understand why this lawsuit has to go back to Williamson County. There's two kinds of parties in this case. There's parties to the appeal and there's parties to a contract. And this exhibit right here is part of the contract. It's the poster board on my left. First, I want to talk about the parties to the appeal. Mr. Gupta is the only appellant and he's the only plaintiff in the two lawsuits. There are, at my count, 46 appellees and 43 of those appellees are renting floor space at the mall. They're like restaurants, hair shops, clothing stores, that sort of thing. There's three that I call the oddballs that don't fit into that description. Number one is Sears Roebuck and that, of course, is a store. What makes them an oddball is they're not renting floor space at the mall. Sears Roebuck has its own landlord and it has a building that looks like it's at the mall. I mean, if you go to the mall, you park in the same place, like you go to any other store, but it has its own landlord and a separately owned building. The final, what I call oddball, appellee, is the owner of the mall building itself. Not the parking lot, but the building. And that's Illinois Star Center LLC. Mr. Gupta owns part of what we will call the developer's parcel. He's called that throughout and we'll be hitting that phrase over and over again. And Illinois Star Center LLC owns the other part of the developer's parcel, the building part. Mr. Gupta has the parking lot. More about that in a moment. The appellees claim in certain court and claim here that they can use Mr. Gupta's parking lot for free. They can do that because they have an easement under the shopping center agreement to use Mr. Gupta's parking lot. Therefore, they don't have to pay. The agreement is about 90 pages and it governs the construction and then the operation of the shopping center. The agreement is reported with the county recorder and it's in the record of appeal. I want to explain how Mr. Gupta came to own the parking area. He got it the same way that Illinois Star Center LLC came to own the mall building. Mr. Gupta bought the parking lot for unpaid taxes at the county's annual sale. But Illinois Star Center LLC did the same for the building. We know that at one time the developer, the original developer of the shopping center owned the parking area. Owned the building too. I'm going to show you how we know. I'm going to tell you, I'm going to show you. This is the yellow cover brief, the reply brief. And I have put a one-page appendix on it. And if you go to the very extreme back of it, you're going to see Mr. Gupta's taxi. It says taxi at the top and it says Mr. Gupta, why not Gupta down there. And it says, here's the description of the land. I'm going to read it right off so I don't get the full line. Part of the developer's parcel 1. And then skipping down the line, this parcel includes developer's parking south and developer's parking north. So obviously we're talking about the developer's parcel. Who's the developer? The developer was an original party to the shopping center agreement. Their name doesn't matter. The shopping center agreement had three original parties. They were the developer, Target, which is, of course, a store, and Dillard, another store. Now, Dillard is actually two entities that operate together as Dillard. But the contract specifically states that they operate as a single party. So there's three parties to the agreement. Dillard and Target and the original developer, they're a wrong, I mean, they're not parties to this appeal. Dillard and Target are still at the shopping center. They're still operating stores. They built stores and they're running them. How does Sears fit into the agreement? Sears is mentioned in this 90-page agreement. And the Sears store is shown on a plaque, which is, of course, a map that is attached as an exhibit to the agreement. But Sears did not sign the agreement. And the agreement says, we have two sections of it here, one useless and the other terms defined. And it defines party. Party means a signatory to this agreement. Can you see that all right? Sears did not sign the agreement. Sears is mentioned in the agreement, but they're not a signatory. So they're not an original party to the agreement. So why did the Apple East claim an easement to use Mr. Goop's parking lot for free? Section 3.3 of the agreement sets forth the easements. And it says, as you can see, each party grants to the other parties easements to use the common area. And this includes easements to use the parking area. And, of course, Mr. Goop owns the parking area. All 28 acres? Yes. And, Your Honor, there is some parking area, as I understand it, that he does not own. But he's got 28 1⁄2 acres. It's his. But the anchor stores, they also have some parking. I am told. Well, this phrase that I just read, the grant of the easement, is actually three grants, if you think about it. Because it says each party. And there are three parties. That means there are three grantors. Three grantors, and each one has how many grantees? Well, each party grants to the other parties. If there's three parties, each grantor, there's only two grantees, right? So, Dillard is granting an easement to use the common area to target the developer. Target is granting an easement to Dillard, the developer, to use the common area. And, most important for this hearing, the developer is granting Dillard and Target an easement to use the common area, including the developer's part of the parking lot. And that is enough of this case. Who are the grantors? Who are the grantees? Notice, if this did not say, each party grants to itself and the other parties an easement. It doesn't say that. That's the same thing about granting to itself. And then, of course, that would be an insertion of two more words, itself and. But it doesn't say that. It doesn't say that. None of the parties is granting an easement to itself. And that wouldn't make any sense in the law. The only law discussed here this morning is that the Illinois Supreme Court, in the two cases that I've cited in the briefs, say that you can't grant yourself an easement. That makes sense. There's ways to end up with one, but you can't do it every time. So, none of the parties is granted itself an easement. Each party is granted an easement to just two parties. So, who has the easement to Mr. Gupta's parking area that the developer was granted? And the answer is, there's only two grantees, Target and Dillard. They are the only grantees of the developer's easement. They are the only parties, and they're not parties here, that have this easement to use the parking area. And the case is that simple. Actually, if I'm struck by lightning right now, you have enough. This is enough to decide the case, because the easement was the basis on which the Circuit Court, well, it's the basis on which all the athletes argued for dismissal, and it's the basis. The Circuit Court didn't say, well, I just dismissed it, but there's nothing else. That's all you need to know. I'd like to point out a couple of other things. This party doesn't just necessarily mean the original party. It also means successor, successor person acquiring any interest in any portion of the shopping center, shopping center site. Well, doesn't Illinois Star Center, the owner of the mall building, qualify? I mean, it owns part of the shopping center site. Why doesn't, why isn't it a successor? Well, see, the answer is that it's a successor, but of whom is it a successor? It's not a successor of Dillard and Target that had the easement. It's a successor of the developer. And the developer didn't grant itself an easement. So Illinois Star Center doesn't have an easement to the developer's parcel. It owns part of the developer's parcel. And, of course, it is not an other party. Only other parties have this easement, and the other parties, of course, are Dillard and Target. Dillard and Target, again, have no successors. They're still at the mall. What about Sears, Sears and its landlord? Sears is not a successor to Target or Dillard, and that kind of does it right there, because it does say other parties, and we know who they are. Sears is shown, again, on the plaque of the shopping center. But Sears, and again, its landlord did not sign, they're not signatories. Sears' parcel is not part of the shopping center site. It's adjacent to it. And I'm not just going to tell you that, I'm going to show you. What I put up now is the first page of the text of the contract. This is, it's in your appendix, and it's right under the title page for the agreement. And you notice it says, it's where I stand, the first page of the line. Developer owns the developer's parcel. Condat, that's one of those entities that's under the contract easement. Dillard owns the Dillard parcel. Target owns the Target parcel. And notice the developer parcel, Dillard parcel, Target parcel, are hereafter referred to as a shopping center site. We're Sears, we're Sears. So we see it. Part of it means, successor first to the shopping center site. Sears isn't. Sears is bought up against the shopping center, but they're not part of the site. They're not part of the site. And even if they were, they're not a successor to Dillard or Target. The tenants, let's get to the tenants. People renting, companies renting floor space in the mall. Obviously not parties. Obviously not successors. Not even because they have a lease. That's the definition of parties, which goes on for an entire page. The agreement specifically exempts leaseholders and mortgages. One other place has easement. We need to talk about that. Permanentees. Each party grants to the other party. The respective permanentees. These have been seen as the common area, including the parking area. What about permanentees? Who's a permanentee? Permanentees are not just anybody's permanentees. It's other parties and their respective permanentees. Dillard, Target, who are their permanentees? The agreement defines permanentees. It's your customers. It's your employees. And your tenants. Who's employees? Who's customers? Who's tenants? Dillard and Target. Is there any questions so far about what I've talked about? I think it's pretty straightforward, and I think you've got enough. And to sum up, what it looks like. If you showed this to a third-grade class and said, can you see this, where everybody has the easement and everything? I think that they'd say, yes. Yes, Mr. Club, we see it. But if you look at the words, it's not how it works. It's not how it works. It looks like it. Easement of the parking. Roll them off in the air, and everybody's got them, and they come down. That's not how it works. It's a specific grant of easement to two apartments, and that's it. Now, that's enough. That's enough. But I'd like to point out that Mr. Cooper, in his complaint, pleaded unjust enrichment. And that is an independent and perfectly good basis on which to send this back to the circuit court for further proceedings. The appellees are using the parking lot for free, for free at Mr. Cooper's expense. This is textbook unjust enrichment. And the other parties do not dispute the cases that I cited in our briefs. They say it can't be unjust enrichment because we have an easement. Well, we took care of that. Next, they say, well, you can't use unjust enrichment to relieve you of the burden of contracting. Just wish you hadn't signed. Well, and that means the shopping center agreement, in this case. But tenants aren't a party to it. Sears isn't a party. Sears' landlord isn't a party. So that leaves Illinois Star Center LLC, owner of the building. The agreement sets forth the relationship between Illinois Star Center, as the successful developer, and Target, the dealer, but it doesn't set forth the relationship between two parties, should they come to both own the developer's parcel. For instance, let's say that the agreement said that if the parking lot and the building ever become owned separately, that thereafter the parking lot owner shall be entitled to 45% of the rent. Well, then Mr. Gupta wouldn't be entitled to proceed on unjust enrichment because there's an express contract. And, of course, he'd have an action against the express contract. But we don't have that in this case. There's no such provision in this agreement. And, therefore, unjust enrichment works just fine. To summarize, unjust enrichment is not clarified in the agreement, shouldn't have been dismissed, dismissal should be reversed, and this should go back to the circuit court for determination of how much back rent and how much front rent Mr. Gupta is entitled to. It would seem that in a case like this, that the owner of the building would realize that he needs the parking lot, needs the owner of the parking lot, maybe they ought to work together. But that's not just common sense. It's also the contract. The agreement states that if two people, if you're calling them persons, should come to own parts of the parcel of an original party, that they will be jointly considered a single party under the agreement. And, of course, the agreement states that the developer can rent the property, collect the rents. Well, that means that under the agreement, Mr. Gupta, as owner of the parking lot, is also the landlord. He's jointly the landlord of this mall. Now, the tenants are going around him. The tenants are saying, well, he's just out there on the asphalt. We go in the building, we pay our rent checks, we've got floor space in the mall. Well, they're not dealing with the landlord. They're not dealing with the landlord. They're trespassing on the parking lot. They don't have anything else. Are there any questions, Your Honor? I wish I could ask Justice Chaffin. Thank you. Thank you. Cancel. Cancel. May I please have the floor? Counsel. My name is Steve Green. I represent Illinois Star Center, LLC, and some of the tenants, and have been elected to be spokesmen for all of the affiliates. And I'm not as smart as a third grader, apparently. The issue before the court, the issue before the court, deals with Mr. Gupta's claim that pursuant to his tax deed, that the individuals who are tenants and successors of interests into different pieces of property of the shopping mall cannot utilize his properties at all, without paying. He also makes claims that are new before the court, and that has been fully briefed, but I will touch upon them because most of the argument today focuses on those new arguments. First, the definitions that are utilized are being argued to suggest that the only parts are the signatories to the contract and no one else. If the court takes the time to look at the appendix that was attached to Mr. Blood's brief and was listed as page 7, the third paragraph, that language of the contract contemplates new parties to the agreement. Specifically, it says, Upon any transfer or conveyance or reversion of title, which transfer or conveyance or reversion would create a new party, pursuant to the terms hereof, then the obligations here conferred upon a party with respect to the parcel so conveyed or reverted shall be assumed by such transferee or grantee with respect to the parcel so granted. Mr. Gupta is a new party as well. The question is really whether or not Mr. Gupta should be saved from a bad business decision. He bought this piece of property. He had the ability to look at the records at the courthouse. Counsel agrees that there was this document that was put on at least constructive notice to Mr. Gupta of the easements that were created by this contract. There is no question, at least at this point, that these easements were created. Now, at trial court, Mr. Gupta did in fact argument that there was no valid easement. That argument has now been abandoned in appellate court, and they have shifted their argument to the claim with, Well, the parties, the appellees, the defendants, cannot claim a benefit that was created by this document because at the exception of the mall, that piece of property was owned by one individual, the developer, and as a result, you cannot create an easement for yourself. Today, you're asked to look at a deed or part of that proposition. It's strange to me that that deed is plural. It says that Mr. Gupta, who, by the way, apparently is the one that drew up the deed, got his property as being part of developers, plural, parcel one of the Illinois Center sub, and it goes on, situated in Williamson County. It is not hyphenated. It is plural. Secondarily, if you look at the agreement that the parties in fact entered into, it is certainly contemplated that the developer was going to develop several different portions of the property. Again, as you were asked to by Mr. Blood, the first page where the recitals were stated, it says, underneath witness, the seventh paragraph down, that the developer is going to construct one or more buildings for retail, and it goes on, and it says, to be located on a portion of the developer property within the developer building areas, shown on Exhibit B. Unfortunately, I did not bring the entire agreement, and I don't have Exhibit B, but this document, in that part, indicates that several different areas were going to be developed, and Sears, in fact, was developed by the developer at the same time that the mall was. His argument that Sears cannot benefit because it's not a signatory to this agreement falls for a variety of reasons. First, because I think that the language he relies upon is a strange reading of the exact document that you have before you. I'd point out again that the document contemplates that it would be new parties, but definitionally, it defines a party as being any successor acquiring any interest in or any portion of the mall, the shopping center site. Permittees are defined as the parties, their respective officer, director, employees, agents, contractors, customers, visitors, invitees, licensees, tenants, subtenants, and concessionaires. It is clear that Sears is a tenant. It is also clear that a variety of the defendants that were originally named are all tenants. Target is not a party to this case, who is an owner of the property. Dillard's is not a party to this case, which also owns certain portions of the property. But the Illinois Star Center LLC is a party here today and has acquired, by way of succession, an interest in a portion of the shopping center site. Most of the argument today rests upon his idea that the developer at one point in time owned all this property. Again, if you look at the first page of the agreement, it's very clear that there were a variety of individuals that owned that piece of property and they pulled those properties together to build the site. And he's right. Target was one of them. Dillard's was the other one. The developer, there were three, that owned these properties at the time that they began the actual construction. But what is ignored is the language that contemplates that there would be conveyances and other interests that would be given to other entities. The agreement specifically sets forth the obligations of what is being called the parking lot to service the mall common area and the tenants therein. Now, he is correct. Illinois law does say that an owner of land cannot create an easement on his own piece of property. But that is not where the court is supposed to stop. I would first point out, this is a new argument, was not made at the trial level, could have been made at the trial level, it is weighted. But even if this court thought it might have been an argument and should remain the case for consideration, I would ask you not to, because the argument fails under simple logic. Either the agreement that has been filed is valid or it is not. If it is valid, then the parties and the tenants and the permittees all have a valid easement to utilize the parking lot. Mr. Gupta isn't complaining here today that the mall or the owners or somebody is using his property to build a structure on it or doing something other than what the easement created in terms of a right for those individuals utilizing the shopping center at all. Because those individuals are exercising their rights underneath this contract, they are entitled to those protections. His argument today, in contrast to that, is while they're not signatories to the agreement and because they're not signatories, they cannot benefit. Well, it's very clear that the agreement and the language that it contains says that each party grants to the others and their respective permittees. So it's clear that Sears is an entity that is covered by the exact language of this document. It is also clear that everyone else is a successor of the interest that the developer or the other individuals may have had because they have all got a portion of the shopping center site. No one argues that that is not true. What is attempted to be argued is, well, the only portion that we're going to talk about is what the original three individuals owned and nothing more. Well, today, things have changed, obviously, because you have different parties than those that were contemplated in the contract. And again, I would ask you to look at the fact that they contemplated that there would be new parties. Page 7 of that agreement simply says that in the event that there is a new party, they get the benefits and the responsibilities of those properties as well. That language is ignored. If the court does have a question, I would ask Mr. Blood how he explains that this language would be in the contract, contemplating a new party, if in fact his argument is there can be new parties. That would make this language invalid, useless, meaningless in terms of the document itself. At the trial level, at least, it was argued that the Eastman agreements were invalid, did not attach to the land. This court has already ruled in SI Securities v. Edwardsville Bank that that, in fact, is not true, that all of the easements that relate to that piece of property a tax purchaser takes subject to. Is there unjust enrichment here? I would suggest that there is not. Was there a bad decision made by Mr. Gupta when he purchased this property? Perhaps so. He made a decision to buy this piece of property. Mr. Gupta's been buying tax property for a number of years. I believe he's been in this appellate court on a number of other cases in the past. He is not someone that is simple. He is a sophisticated individual who knows what he's doing. He gambled on this piece of property, and I suggest his gamble failed. Now he's asking this court to help him out of that bad business decision, and this court should not. Additionally, it is important to note that Mr. Gupta does not seek any relief at all from GE Commercial Finance Business Property Corporation. Sears Roadway. It's talked about here today, but in his brief it is not discussed. He has waived any and all claims that he made at the trial level, the counterclaims and the claims that he made against them that were dismissed, because he did not give counsel the opportunity to present arguments with respect to them their way. Thank you for your time. Thank you, counsel. Counsel. Thank you so much, Your Honor. Just for the benefit of Justice Chapman, who is not in the courtroom, I'd like to point out that I've got two large poster boards here in the courtroom, and that the material that's on them, discussed in some detail, can be found at pages 1, 2, and 4 of the appendix to appellate's brief, a much smaller type. I just heard an argument that we had technically waived claims by failing to make them in the circuit court, and I will tell you that I am the first person to realize that there was no easement. But this court, in a civil case, has never just said, oh, technical waiver, I had bad waffles this morning, I'm holding this as waiver. This court has always looked at whether it's an appropriate case for waiver, whether it's a question of law, whether justice between the parties requires the issue to be decided, and whether the public good requires that the issue be raised. And I'd like to remind the court that we're talking about a tax deed here. In this case, this property's already been sold for taxes. If Mr. Gupta can't make a penny on it, he's going to let it go. It's going to be sold for taxes again, and somebody's going to figure out that this is worthless real estate. This is very much a matter of public good. There's every reason to disregard waiver in this case. We're here on a motion to business. Mr. Gupta doesn't have to prove anything. The question is whether Mr. Gupta could prove any set of facts which would entitle him to recover. That's it. He certainly doesn't have to. Whether the developer owned the property or not is a red herring, because if the developer owned the property, then he only granted it to the other parties, which, of course, we know are deliberately targeted. If the developer didn't own the property, then there's no right or reason at all to anyone. So either way, there's no reason. The suggestion has been made that what I said only applies to the original parties. But I think we went a great deal further than that, didn't we? We talked about successors. We talked about successors who established none of the parties, in this case, to be successors. We talked about permittees. None of the parties to be permittees. Why can't they? Simply because the other parties that are the grantees to the developer as a rancor are Target and Dillard, which are still their animal successors, and they have permittees, they have customers, they have employees, but they're not any of these affilies. We can see Dillard and Target have an easy reason to use Mr. Cook's parking lot for free. We can see Dillard and Target. They are not parties to this appeal. What we haven't heard is any explanation of tracing the dots, connecting it up. Okay, if you have an easement, who's your rancor? Who granted it to you? How did you get it? Connect the dots for us. Instead of what we're getting is like waving a hand and going, see, there's an easement. We got an easement. See, section 3.3, we got an easement. I connected the dots for it. I connected them all. There's no easement in this case. None of these parties has an easement. Even Mr. Gupta doesn't. He owns the parking lot. What does he need from the easement? None of the parties represented in this room today has an easement to this parking area. And we proved it. This case shouldn't have been dismissed. Mr. Gupta's entitled to his back rent, and now he's entitled to his front rent. Any questions at all? Any questions about the easement? Is there any opinion that I'm clear about the easement? About how much unjust enrichment, because that wasn't in touch. There should seem to be a walkover on that issue. And that's not something Mr. Gupta would. Every version of his complaint had unjust enrichment. Not even technically. Thank you, Brian. Thank you, counsels. We will talk, myself and Judge Wells will talk to Judge Chapman next week. Thank you.